UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| RENE F. FERNANDEZ,<br><br>　　　　　　　　　Plaintiff(s),<br><br>　　v.<br><br>ROMEO ARANAS, et al.,<br><br>　　　　　　　　　Defendant(s). | Case No. 2:16-CV-812 JCM (NJK)<br><br>ORDER |

Presently before the court is defendant Romeo Aranas's motion for summary judgment. (ECF No. 15). Plaintiff Rene Fernandez filed a response (ECF No. 40), to which Aranas replied (ECF No. 43).

Also before the court is plaintiff's motion to extend time to respond to defendant's motion for summary judgment. (ECF No. 34). Defendant Aranas filed a response (ECF No. 38). Plaintiff has not filed a reply, and the time for doing so has since passed.

Also before the court is defendant Aranas's motion to dismiss defendants Hanf, Chang, Holmes, and Su from the action for lack of service. (ECF No. 48). Plaintiff has not filed a response, and the time for doing so has since passed.

Also before the court is plaintiff's "motion to deny defendant's motions, oppositions, replies, and request for Jury Trial." (ECF No. 53). Defendant Aranas filed a response. (ECF No. 54). Plaintiff has not filed a reply, and the time for doing so has since passed.

Also before the court is defendant Aranas's motion to strike plaintiff's amended complaint. (ECF No. 65). Plaintiff has not filed a response, and the time for doing so has since passed.

. . .

**James C. Mahan**
**U.S. District Judge**

## I. Background

The present case involves a dispute over whether prison medical staff provided adequate medical services to an inmate. Plaintiff was incarcerated at High Desert State Prison ("HDSP") from June 3, 2011, through August 28, 2014, when he was transferred to Northern Nevada Correctional Center ("NNCC"). (ECF No. 4). Plaintiff alleges that during his time at HDSP, medical staff did not adequately attend to his medical needs.

Plaintiff has a history of high blood pressure. (ECF No. 15-3). Prior to his incarceration at HDSP, plaintiff was at Clark County Detention Center ("CCDC"). While at CCDC, medical staff prescribed Amlodipine to control plaintiff's blood pressure. *Id.* (transfer records from CCDC to HSDP refer to plaintiff's medication as "Amlodipine"). Plaintiff claims that the drug he took while at CCDC was called Norvasc. (ECF No. 4). Norvasc is a brand-name drug with the same chemical composition as Amlodipine. *See* (ECF No. 15-4) (declaration of Dr. Romeo Aranas) (stating that Amlodipine is the generic name for Norvasc). Medical staff at HDSP administered 10 mg doses of Amlodipine to plaintiff from his intake at HDSP through February of 2013. (ECF No. 15-3). Plaintiff asserts that he requested Norvasc instead of Amlodipine. (ECF No. 4). Plaintiff signed medication logs acknowledging his receipt of the brand-name drug Norvasc on at least seven occasions. (ECF No. 15-3).

Plaintiff complained of health issues while taking Amlodipine/Norvasc. (ECF No. 4). On November 14, 2011, plaintiff sent a prison kite[1] claiming that his left hand was swollen, he was in lots of pain, and he needed medical attention. (ECF No. 15-3). Medical staff met with plaintiff the next day and prescribed ibuprofen.

On December 23, 2012, plaintiff sent a kite requesting a private medical consultation. *Id.* The next day, HDSP Doctor Ted Hanf ordered labs and a follow-up appointment. *Id.* On December 26, 2013, staff collected labs from plaintiff for urinalysis. *Id.* at 52.

On January 24, 2013, plaintiff filed a kite complaining that his labs had been cancelled and complaining of severe kidney pain lasting three weeks. *Id.* at 34. Plaintiff requested that staff

---

[1] A kite is a prisoner's request for something from the prison facility. In the medical context, it is usually a request to see a medical services provider.

change his blood pressure medication from Amlodipine to Atenolol. *Id.* On January 31, 2013, Dr. Hanf ordered additional labs and scheduled a follow-up appointment with plaintiff. *Id.* at 27.

On February 7, 2013, Dr. Hanf met with plaintiff. *Id.* Dr. Hanf's notes indicate plaintiff was experiencing back pain and plaintiff attributed the pain to Norvasc. *Id.* at 37. Plaintiff reported prior use of Atenolol, and stated he preferred Atenolol as a blood pressure medication. *Id.* Dr. Hanf discontinued plaintiff's Norvasc prescription and placed plaintiff on 100 mg of Metoprolol, another blood pressure medication. *Id.* at 27, 37. Dr. Hanf scheduled a follow-up appointment in a month. *Id.* at 37. On February 15, 2013, LabCorp completed processing of plaintiff's remaining labs. *Id.* at 54–55.

For the next few months, plaintiff failed to report to numerous medical appointments. Accordingly, records of plaintiff's initial response to Metoprolol are sparse.

On June 28, 2013, plaintiff filed an "emergency grievance" with prison staff indicating that he felt "sick with dizziness and a headache, with intense pressure in the back of [his] head, vomiting and loose bowel movements." (ECF No. 15-2). That same day, staff provided plaintiff with an immediate refill of his blood pressure medication. *Id.*

Between February of 2013 and August of 2014 (when plaintiff was transferred to NNCC), staff treated plaintiff's blood pressure with multiple combinations of Metoprolol, Lisinopril, Atenolol, and Amlodipine. (ECF No. 15-3) (indicating numerous alterations to plaintiff's medication regimen). When plaintiff did attend appointments, he would sometimes describe pain, negative side effects, and problems with his digestive system. *Id.* Plaintiff at times refused to take prescribed medications, including Norvasc and ibuprofen. (ECF No. 15-3 at 28, 55–56).

On November 22, 2013, Fernandez filed an informal grievance regarding HDSP staff's treatment of his blood pressure. (ECF No. 15-1). On December 31, 2016, HDSP medical staff responded to plaintiff's informal grievance by noting staff's efforts to control plaintiff's blood pressure and noting that periodic follow-up visits will help staff continue to monitor plaintiff's blood pressure. (ECF No. 15-1 at 13).

As a part of his informal grievance, plaintiff had requested a remedy of being prescribed "a non-generic Atenolol 25 mg or Norvasc 10 mg and Ibuprofen 400 mg." *Id.* At the time he

1 made the request, he was already prescribed 25 mg doses of Atenolol. (ECF No. 15-3 at 28). On December 16, 2013, HDSP staff prescribed plaintiff Norvasc, but on January 16, 2014, plaintiff signed a legal refusal of the prescription for Norvasc. *Id.* at 28, 55.

On January 28, 2014, plaintiff filed a first-level grievance disagreeing with the medical staff's response to his informal grievance. *Id.* at 14–17. On February 13, 2014, medical staff responded. *Id.* at 18. The response noted that high blood pressure symptoms evolve, and sometimes medication that previously worked will no longer prove effective and "must change." *Id.*

On March 6, 2014, plaintiff filed a second-level grievance disagreeing with the first-level response. *Id.* at 22. On April 8, 2014, Dr. Aranas, acting NDOC medical director, reviewed and upheld the first-level response. *Id.*

On May 22, 2014, plaintiff filed a kite stating that his blood pressure was "out of control" since he arrived at HDSP and that he needed medical attention to receive adequate medications. *Id.* at 44. On June 2, 2014, medical staff met with plaintiff and reviewed his medications. *Id.* at 30. Medical records indicate this was the last interaction between plaintiff and HDSP medical staff prior to plaintiff's transfer to NNCC on August 28, 2014. *Id.*

On April 8, 2016, plaintiff filed his complaint alleging deliberate indifference to a serious medical need. (ECF No. 4). Plaintiff alleges that the HDSP staff's failure to properly adjust his blood pressure medication caused painful side effects, including kidney pain. (ECF No. 4). On January 6, 2017, the parties attended a court-sponsored mediation. (ECF No. 8). The parties did not reach a settlement.

On December 7, 2017, plaintiff filed an amended complaint against defendants Aranas, Chang, Hanf, Holmes, and Su. (ECF No. 61). On December 20, 2017, defendant Aranas filed a motion to strike plaintiff's amended complaint. (ECF No. 65).

## II. Legal Standard

*a. Summary judgment*

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). Moreover, "[i]n such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Id.*

By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the non-moving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

### b. Leave to amend

Federal Rule of Civil Procedure 15 states,

> (1) *Amending as a Matter of Course.* A party may amend its pleading once as a matter of course within:
> (A) 21 days after serving it, or
> (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
> (2) *Other Amendments.* In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a). The United States Supreme Court has interpreted Rule 15(a) and confirmed the liberal standard district courts must apply when granting such leave. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). However, the court in *Foman* noted an exception to granting such leave arises when amendment of a complaint would be futile. *Id.* In such cases, courts need not grant leave to amend. *Id.*

### c. Motion to strike

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Additionally, district courts have inherent power to control their own dockets, including the power to strike items from the docket. *Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010).

## III. Discussion

### a. Defendant Aranas's motion for summary judgment

As an initial matter, the court will grant plaintiff's motion to extend time to file a response to defendant's motion for summary judgment. (ECF No. 34). Defendant Aranas noted in his response to plaintiff's motion to extend time that he would not oppose granting plaintiff until August 15, 2017 to file a response. (ECF No. 38). Plaintiff filed his response on August 14, 2017. (ECF No. 40). Accordingly, as granting the extension of time promotes disposition on the merits and does not prejudice defendant, the court will grant plaintiff's motion.

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).

To establish the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted). To satisfy the deliberate indifference prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id*. "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id*. (internal quotations omitted). When a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further injury. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference").

A difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to serious medical needs. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Additionally, "[a] difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a [§] 1983 claim." *Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981). To establish that a difference of opinion amounted to deliberate indifference, the prisoner "must show that the course of treatment the doctors chose was medically unacceptable under the

circumstances" and "that they chose this course in conscious disregard of an excessive risk to [the prisoner's] health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

"[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).

Here, plaintiff's complaint does not establish deliberate indifference to a serious medical need. During his time at HDSP, medical staff monitored his blood pressure condition. (ECF No. 15-3). Plaintiff's medical file contains 19 separate HDSP physician's orders concerning treatment of plaintiff's blood pressure and other chronic conditions. *Id.* Nursing staff recorded plaintiff's blood pressure at least twenty times. *Id.* HDSP staff ordered and reviewed lab work related to plaintiff five times. *Id.* Medical staff offered plaintiff treatments that included prescription drug medications. *Id.* When plaintiff notified staff of medical emergencies, staff immediately followed up with him and tried to address his medical needs. *Id.*

Plaintiff did not always attend his medical appointments. Plaintiff rescheduled at least three appointments because he was in the law library and at least two appointments because he was at work or school. *Id.* A grievance response filed by a nurse supervisor on February 13, 2014, notes "You have been seen by 6 providers in the past year. Additionally, we attempted to see you 4 more times but you were not in the unit for one reason or another." (ECF No. 15-1 at 18). Further, plaintiff refused to accept a medication prescription that he personally requested. (ECF No. 15-3). Plaintiff's medical records demonstrate that HDSP staff attempted to help plaintiff control his blood pressure, but his conduct made the medical providers' task difficult.

Plaintiff's complaint and medical record while at HDSP establish at most that plaintiff and HDSP staff had different opinions as to the appropriate treatment medications for plaintiff's high blood pressure. This does not establish deliberate indifference to serious medical needs. *See Franklin*, 662 F.2d at 1344 ("A difference of opinion between a prisoner-patient and prison

medical authorities regarding treatment does not give rise to a [§] 1983 claim."). The court will grant defendant Aranas's motion for summary judgment.

In light of the foregoing, the court need not consider defendant Aranas's alternative ground for summary judgment, that Aranas never personally participated in any of plaintiff's medical care.

    *b. Plaintiff's amended complaint and defendant's motion to strike*

Plaintiff filed an amended complaint on November 21, 2017. (ECF No. 61). Defendant Aranas filed a motion to strike plaintiff's amended complaint. (ECF No. 65).

Here, plaintiff cannot amend his complaint as a matter of course, as the amended complaint was filed more than 21 days after responsive pleadings were filed. *See* Fed. R. Civ. P. 15(a)(1).

Further, the court will not grant leave to amend under Rule 15(a)(2). Plaintiff's amended complaint suffers from the same deficiencies outlined in the court's ruling on defendant's motion for summary judgment. The allegations do not suggest that HDSP staff was deliberately indifferent to plaintiff's medical needs. Amendment here would be futile. The court will grant defendant's motion to strike plaintiff's amended complaint.

    *c. Other outstanding motions*

As the court will grant defendant's motion for summary judgment, the court will deny plaintiff's "motion to deny defendant's motions," (ECF No. 48), and defendant Aranas's motion to dismiss, (ECF No. 48), as moot.

**IV. Conclusion**

Plaintiff has failed to provide evidence to support his conclusory assertion that HDSP staff were deliberately indifferent to his medical needs. The court will grant defendant Aranas's motion for summary judgment.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant Aranas's motion for summary judgment (ECF No. 15) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiff's motion to extend time to file a response to defendant's motion for summary judgment (ECF No. 34) be, and the same hereby is, GRANTED.

James C. Mahan
U.S. District Judge

- 9 -

1    IT IS FURTHER ORDERED that defendant Aranas's motion to dismiss (ECF No. 48) be, and the same hereby is, DENIED as moot.

IT IS FURTHER ORDERED that plaintiff's "motion to deny defendant's motions, oppositions, replies, and request for Jury Trial" (ECF No. 53) be, and the same hereby is, DENIED as moot.

IT IS FURTHER ORDERED that defendant Aranas's motion to strike plaintiff's amended complaint (ECF No. 65) be, and the same hereby is, GRANTED.

DATED February 27, 2018.

_____
UNITED STATES DISTRICT JUDGE